IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PROFESSIONAL FIREFIGHTERS ASSOCIATION OF OMAHA, LOCAL 385, et al., | ) ) ) ) | 8:10CV198 |
| Plaintiffs, | ) ) | |
| v. | ) ) | MEMORANDUM AND ORDER |
| CITY OF OMAHA, et al., | ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on plaintiffs' (consisting of retired Omaha police, firefighter, and civilian employees) motion for a temporary injunction. Filing No. 22.[1] The court conducted a hearing, entertained argument, and received evidence on June 7, 2010. After carefully reviewing the evidence and the relevant law, the court will grant the motion for preliminary injunction.

## BACKGROUND

Retired firefighters, police officers and some city workers, numbering about 1,100 in all, are suing the City of Omaha, individuals on the Omaha City Council, and the mayor of Omaha, alleging the health benefits of the retirees have been changed by a recent ordinance passed by the Omaha City Council on May 18, 2010, which will become effective, July 1, 2010. The Omaha City Council passed this ordinance in an attempt to replace the previous collective bargaining agreements ("CBAs") which defined the percentage of payment, if any, paid by the retirees for health benefit premiums. The new

---

[1]The court notes for the record that on June 9, 2010, defendants filed a motion to dismiss the union plaintiffs. Filing No. 34. The court will allow response time and address that motion at a later date.

ordinance will increase the cost to a number of the retirees. *See* Filing No. 1, Ex. A, Art. 23 ("Ordinance"). The Omaha City Council passed this Ordinance because Blue Cross Blue Shield raised the health premiums for both retired and active employees.

Plaintiffs argue that such changes violate their rights pursuant to the following: § 10 of the United States Constitution, obligation of contracts; Art 1, § 15 of the Nebraska Constitution, obligation of contracts; the Fifth Amendment, unlawful taking clause; the federal equal protection clause; the state equal protection clause; 42 U.S.C. § 1983; equitable estoppel; and the Omaha City Charter, § 6.09, Home Rule regarding benefits. Plaintiffs ask for a declaratory judgment. Filing No. 1, Complaint.

## ANALYSIS

When analyzing a motion for a preliminary injunction, the court must review the *Dataphase* factors to determine if relief is appropriate. *Dataphase Systems, Inc. v. C. L. Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). The court must look at the following factors:

### 1. Threat of irreparable harm.

Plaintiffs argue their health benefits are vested and that they must have injunctive relief before the new ordinance becomes effective, or they will experience irreparable harm, as they may lose these health benefits. Defendants contend, however, that the claim is for monetary damages only, and thus there is no irreparable harm to the plaintiffs. The court finds, based on the testimony and exhibits offered to date, and as discussed in factors 2, 3, and 4 herein of the *Dataphase* analysis, that there is a threat of irreparable harm. Jeopardizing health insurance benefits during the pendency of the suits, including

risking the loss of benefits and the inability to re-obtain coverage if the court later finds in favor of the retirees, is a serious risk to the retirement beneficiaries.

### 2. *Balance of harm.*

Defendants argue this Ordinance will save the taxpayer four million dollars per year. However, plaintiffs argue that many of their members will have to pay increased health care payments each month until this lawsuit is decided. Some plaintiffs contend that due to financial constraints they will be forced to give up benefits for themselves and/or their families. See Filing No. 24, Attachments 1-14, Affidavits of retired and current employees. The Eighth Circuit has stated: "It is hard to imagine a greater harm than losing a chance for potentially life-saving medical treatment." *Henderson v. Bodine Aluminum, Inc.*, 70 F.3d 958, 961 (8th Cir. 1995). The court finds that the City of Omaha is in a better position to shoulder this burden than the individual retirees. The court further finds as set forth under *Dataphase* factor one above that plaintiffs have the potential for significant harm if this Ordinance is executed. Accordingly, the court concludes that this factor likewise weighs in favor of the plaintiffs.

### 3. *Probability of success on the merits*.

Defendants argue that these health care benefits are not vested and are subject to future changes, relying on *Anderson v. Alpha Portland Industries, Inc.,* 836 F.2d 1512 (8th Cir. 1988) (benefits not vested but intended only for the duration of the collective bargaining agreement, where reservation of rights clause existed and where agreements stated benefits were subject to renewal each year). Plaintiffs argue these provisions regarding health care benefits are vested and not subject to change. Thus, the plaintiffs argue, they will win on the merits.

3

The parties offered excerpts from the respective collective bargaining agreements in effect when the various employees retired. The court found no limiting language or reservation of rights in any of these CBAs. It is clear from the pattern and practice of the parties that the CBA required payment of premiums consistent with the CBA in effect at the time of the employee's retirement.

The Eighth Circuit in a case very similar to the one before this court recently stated:

> Defendants maintain that this provision does not obligate the City to pay retiree health benefits because "retirement coverage" was not defined in the CBA. Labor laws, however, "do not require all the details of particular practices to be worked out in advance." *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n,* 491 U.S. 299, 318, 109 S. Ct. 2477, 105 L. Ed.2d 250 (1989). Rather, it is "well established that the parties' practice, usage and custom is of significance in interpreting their agreement." *Id*. at 311, 109 S. Ct. 2477. Since 1996, CBAs between the City and the Union have contained similar "retirement coverage" language, which the City has interpreted to mean that it pays retiree health insurance premiums. (See Appellant Supplemental App. at 224.) Indeed, City Council minutes demonstrate that the City began paying retiree premiums as early as 1989. (See *id*. at 295, 109 S. Ct. 2477.) Therefore, the absence of a specific explanation of "retirement coverage" does not undermine plaintiffs' claim that the CBA calls for City payment of health insurance premiums. We find that the CBA language interpreted in the light of the City's past practice reflects an agreement to pay retiree health insurance premiums.

*American Federation of State, County and Municipal Employees, Local 2957 v. City of Benton, Arkansas,* 513 F.3d 874, 879-80 (8th Cir. 2008) (union sued to enjoin City of Benton from unilaterally terminating agreements to pay retiree health care insurance premiums). The court finds that *Benton* is applicable to this case.

With regard to the issue of vesting as argued by all parties, the *Benton* court stated:

> Retiree health benefits will survive the expiration of a CBA if they vest before the agreement expired. *See Crown Cork & Seal Co. v. Int'l Ass'n of Machinists & Aerospace Workers,* 501 F.3d 912, 919 (8th Cir.2007). Such benefits fail to vest if limited by a clause "expressly limiting the duration of the

4

retirement health benefits . . . to the duration of the Master Agreement," [John Morrell & Co. v. United Food & Commercial Workers Int'l Union, 37 F.3d 1302, 1307 (8th Cir.1994)](), or if the agreement contains a blanket reservation of rights to an employer to unilaterally modify or terminate the retiree health plans.  *See* [Crown Cork, 501 F.3d at 918](). The CBA contains neither of these limitations; moreover, defendants offer no law to support their excessive remedy claim."

[Benton, 513 F.3d at  883]() .

Based on the facts, the evidence presented to date, and the *Benson* case, the court finds the plaintiffs are likely to prevail at trial.  The instant CBAs clearly provide for health insurance coverage substantially similar to that which was provided in the CBA at the time of an employee's retirement.  The firefighters' CBAs, beginning in 1979, provided that the cost of the benefit was paid entirely by the City of Omaha.  This provision was substantively continued in each successive CBA through January 1, 2009.  Beginning in January 2009, employees and retirees had to pay an amount equal to 4% of a COBRA equivalency premium for family coverage.  Filing No. 24, Attach. 1, Affidavit ("Aff.") of Scott Muschall, retiree of the City of Omaha Fire Department.  Similar provisions exist for the retirees of the Omaha Police Department.  See Filing No. 24, Attach. 2, Aff. of John Francavilla, Omaha Police Officer and Secretary of the Omaha Police Officers Association, of the Omaha Police Department.  Likewise, similar language exists for the Omaha Civilian Employees Association.  *See* Filing No. 24, Attach. 3, Aff. of Kevin Brown, employee of the City of Omaha and President of the Omaha Civilian Employees Association.

When the court looks to the past practice between the parties, the practice unequivocally demonstrates the parties understood the CBA in effect at the time of retirement applies to the health insurance coverage and the premium share.  There has been no variance in that practice for over twenty years and in some cases thirty years.  The

City has not demonstrated a dire state interest that would permit it to abrogate this contract. The testimony and evidence showed the City has significant budget issues for the years 2010 and 2011. However, based on the evidence presented to this court, the City's budget issues are not so significant that it would justify a unilateral change in coverage as set forth by the ordinance in question in this lawsuit. In addition, there is no reservation-of-rights clause which would allow the defendants to make the proposed unilateral change. There has never been a bargained retroactive change in benefits, only prospective changes. Unilateral changes have never been part of the course of conduct under these collective bargaining agreements. Accordingly, the court finds the plaintiffs are likely to prevail on the merits of this action.

### 4. Public interest.

The plaintiff's argue that it is in the public interest to require the City to honor negotiated and valid CBA agreements. The City of Omaha argues that this Ordinance will save taxpayers four million dollars a year.

City Finance Director, Pam Spaccrotella, C.P.A., testified that the City of Omaha projects a fiscal deficit in 2010 of 12.3 million dollars and 21 million dollars in 2011. She conceded that the City could increase property taxes, decrease spending or a combination of both in order to solve the projected fiscal deficit.

Dr. John Bartle, Ph.D., testified on behalf of the plaintiffs. Dr. Bartle works as a professor at the University of Nebraska-Omaha. He has conducted studies regarding the finances of a number of different cities and, more particularly, the City of Omaha, Nebraska. He testified that the City of Omaha could not increase the sales tax to assist with the budget shortfall, but the City has not reached its limit on property taxes. He has

determined that the property tax for Omaha is average when compared to other cities of similar sizes and that the City of Omaha could find other revenue possibilities to pay these retirement benefits. Neither financial expert testified that the City was nearing bankruptcy nor on the verge of defaulting on its obligations.

Anne Yarick testified that she meets with employees when they are planning to retire. She has been with the City of Omaha for sixteen years and is the pension/health benefits coordinator. She used the Omaha Municipal Code, union contracts, and past practices to advise retirees of their benefits. Ms. Yarick admitted that employees rely on the fact that their premiums will remain the same during retirement. She also knew that employees based their retirement decisions on these discussions. She created checklists regarding health benefits that she knew the employees relied on in making their determinations. She told employees that they would have coverage at no cost or a certain percentage of the cost, as provided for in the collective bargaining agreement in existence at the time of retirement. She did this, for example, with regard to Michael Brookover. Filing No. 24, Attach. 11, Aff. of Michael Brookover. Further, she testified that employees were told that their rate was locked in for retirement. *See also* Filing No. 24, Attach. 1, Ex. A, ¶ 5 (wherein affiant Scott Muschall testifies that he was told his health premium would remain the same in retirement); and Attach. 5, Aff. of Terry Leahy (percentage of health insurance remains constant). Mike Brookover indicated in his affidavit that he believed he would have no changes to the percentage he paid for health insurance premiums. Filing No. 24, Attach. 11, Aff. of Mike Brookover. See also Filing No. 24, Attachments 9, 11, 12 and 14 (affidavits of retirees who relied on the contract in existence at the time of retirement setting the percentage rate for health insurance premiums). Jane Alexander,

an Omaha Civil employee, stated that if this Ordinance goes into effect, she will be unable to retire in July 2010 (she has 29 years of service) as she has planned to do for a number of years. Filing No. 24, Attach. 4, Aff. of Jane Alexander, ¶ 12.

Again, the court in *Benton* addressed this issue:

> The district court also found that the City had not demonstrated a significant economic interest to justify its actions. Although economic concerns can give rise to the City's legitimate use of the police power, such concerns must be related to "unprecedented emergencies," such as mass foreclosures caused by the Great Depression. *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 242, 98 S. Ct. 2716, 57 L. Ed.2d 727 (1978). Further, to survive a challenge under the Contract Clause, any law addressing such concerns must deal with a broad, generalized economic or social problem. Cf. *Blaisdell,* 290 U.S. at 445, 54 S. Ct. 231. Here, although defendants offered testimony of Alderman Allen to suggest that the 2003 resolution was a matter of economic necessity, they never demonstrated that the City faced the "unprecedented emergency" required to justify the abrogation of the CBA. Nor do the minutes of the October 2003 meeting at which the resolution was passed reveal any discussion of budgetary concerns or a broad economic problem prompting action. (See Supplemental App. at 296.) For these reasons, the City's action was not a legitimate exercise of the police power.

*Benton*, 513 F.3d at 882.

The court agrees with the plaintiffs. It is in the public interest to uphold contracts made between the citizens of Nebraska and its public officials. It is in the public interest to support the collective bargaining process and the resulting agreements. The City of Omaha and the Omaha City Council cannot chip away at the rights negotiated by all of the parties, absent unusual and extenuating circumstances. The evidence produced does not persuade the court that the City is in an "unprecedented emergency." The Contract Clause of the United States Constitution provides that no state shall "pass any Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. The action of the Omaha City

Council in passing the Ordinance likely results in a violation of the federal constitutional right to contract. This action also likely constitutes an unlawful taking, contrary to the plaintiffs' rights under the Fifth Amendment of the United States Constitution, which states that private property shall not be taken for public use without just compensation.

While it is always in the interest of the public to not increase taxes, the court finds the sanctity of the contractual relationships between the parties is of greater interest to the public unless there is an unprecedented emergency. The court preliminarily finds there is clearly a contract between the parties, and the Ordinance impairs that contractual relationship, and the impairment is substantial. *See Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) and *Equip. Mfrs. Inst. v. Janklow*, 300 F.3d 842, 850 (8th Cir. 2002) (setting forth tests to determine impairments to contracts). The court further preliminarily finds that the alleged legitimate public purpose for the Ordinance, saving taxpayer dollars and meeting budget shortfalls, does not justify the actions taken given that there are in fact other more moderate measures that can be taken. For the purpose of determining whether the court should enter a preliminary injunction, the court finds that the public interest factor weighs in favor of the plaintiffs.

Accordingly, the court finds the injunction should enter. Likewise, the court finds the plaintiffs should post a bond. The parties produced testimony at the hearing that the Ordinance would save the City of Omaha approximately $4,000,000 per year, which includes administrative savings of $73,000 and reduced insurance administrative fees of $419,400. The saved annual premiums, therefore, amount to $3,107,600 or approximately $259,000 per month. The total administrative savings of $492,000 will be realized by the City regardless of when the ordinance becomes operative. However, the increased cost

of premiums is not recoverable once paid. There will be no ongoing administrative expense pending trial other than that currently in place. The court declines to calculate present value of the administrative savings, especially in light of the high likelihood the plaintiffs will prevail. The court finds the only significant out-of-pocket expense to the City of Omaha is the increased cost of premiums during the pendency of the trial. Trial is set for next month. The court will require the plaintiffs to post a $259,000 bond in this case.

THEREFORE, IT IS ORDERED:

1. Plaintiffs' motion for a preliminary injunction, Filing No. 22, is granted. The defendants are enjoined from enforcing the Omaha City Ordinance until such further time as the court finally rules in this matter.

2. The plaintiffs are ordered to post a $259,000 bond on or before **June 30, 2010,** with the Clerk of Court.

3. Trial of this matter is scheduled before the undersigned at **8:30 a.m., on July 26, 2010,** Courtroom No. 3, Roman L. Hruska U.S. Courthouse, 111 South 18th Plaza, Omaha, Nebraska.

DATED this 10th day of June, 2010.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.