IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

PROFESSIONAL FIREFIGHTERS ASSOCIATION OF OMAHA, LOCAL 385, et al.,

Plaintiffs,

RICK BERGHOLZ, et al.,

Intervenor Plaintiffs,

v.

CITY OF OMAHA, et al.,

Defendants.

8:10CV198

MEMORANDUM AND ORDER

This matter is before the court following a hearing on December 6, 2010, regarding certain class members' objections to the proposed settlement in this case. The plaintiffs, duly authorized collective bargaining agents on behalf of employees of the City of Omaha ("City"), along with the intervenors (certain individual retirees), and the defendants seek approval of the class settlement. *See* Filing No. 410. This court must make a determination as to whether it will approve the settlement.

**BACKGROUND**

The plaintiffs filed this lawsuit alleging that an Ordinance passed by the City of Omaha violated their constitutional rights, as the Ordinance changed the terms of duly passed collective bargaining agreements with the majority of the City's workers. The City passed the Ordinance without negotiating or bargaining with any of the respective collective bargaining units. Plaintiffs filed a complaint requesting that this court enjoin the

City of Omaha from enforcing the Ordinance.[1] The court held a hearing and issued a Memorandum and Order halting enforcement of the Ordinance. Thereafter, the parties, including intervenors not represented by the class, participated in a settlement conference conducted by Magistrate Judge F.A. Gossett. The parties, after a full day of intense negotiations, reached a tentative settlement. This court approved a notice of settlement, and notices were sent to those with interest in this case.

The court set a hearing date for December 6, 2010, and required that objections be filed with the court prior to the hearing. A number of objections, responses, declarations, statements, as well as documents supporting and opposing the approved class settlement were filed. *See* Filing Nos. 150-52; 154-396; 398-403; 405-406; 410-414; 415; 418-421. The court has reviewed each of these filings. Primarily, the objections deal with notice issues, arbitration provisions, a conflict of interest between current and retired employee representation,[2] the possibility of the active members being able to change the contracts on a whim to their benefit and to the detriment of the retirees, and the lack of promise for lifetime benefits. The court then conducted the hearing, received evidence, allowed argument by all counsel, and permitted objectors to make statements if they chose to do so. Following the hearing, the court reviewed the evidence and considered all objections and the proposed Settlement Agreement. The court is of the opinion that it should approve the proposed Settlement Agreement.

---

[1]There are currently over 10,000 retirees affected by this Ordinance and Settlement Agreement.

[2]*See* *Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 171-75 (1971) (court must be cognizant of the fact the potential interests of retirees may conflict with interests of active workers).

## DISCUSSION

A. General Findings

In considering preliminary approval, a court makes a preliminary evaluation of the fairness of the settlement, prior to notice. Manual of Complex Litigation (Fourth) § 21.632 (2010); *see also* Fed. R. Civ. P. 23(e). Then, a court must make a preliminary determination of the fairness, reasonableness and adequacy of the settlement terms and must direct the preparation of notice of the proposed settlement and the date of the fairness hearing. *Id.* The court has completed this process.

After an agreement is preliminarily approved, the second step of the process ensues: notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval. *Id.* Likewise, the court did in fact approve the class action notice. Filing No. 149.

A district court is required to consider four factors in making a final determination that a settlement is fair, reasonable, and adequate: (1) the merits of the plaintiff's case, weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement. *In re Wireless Telephone Federal Cost Recovery Fees Litigation,* 396 F.3d 922, 931 (8th Cir. 2005). A court may also consider procedural fairness to ensure the settlement is "not the product of fraud or collusion." *Id.* at 934. The experience and opinion of counsel on both sides may be considered, as well as whether a settlement resulted from arm's length negotiations, and whether a skilled mediator was involved. *See* *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995). A court may also consider the settlement's timing, including whether discovery proceeded to the point where

all parties were fully aware of the merits. *See City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996).

First, the court notes that the objectors indicate they did not receive appropriate notice of the proposed Settlement Agreement. However, the court finds that the notices were sent by email to current employees and by mail to retired employees, that the proposal was posted to the Web page, and that counsel attended a number of meetings in an attempt to explain the proposal to the members. Accordingly, the court finds the parties received adequate notice of the proposed Settlement Agreement.

The court has reviewed the proposed Settlement Agreement, Filing No. 414, Attach. 1. Plaintiffs, defendants and intervenors have shown that counsel for the parties have negotiated this dispute and have negotiated the terms of a proposed settlement that they believe are fair and beneficial terms to all involved. See Exhibits at Filing No. 423, Hearing on December 6, 2010. Magistrate Judge F.A. Gossett assisted with the settlement negotiations.

The parties also agree, and the court finds, that the proposed settlement is in the best interests of the plaintiff class and the intervenors, based on the claims and defenses in this action, its procedural posture, the anticipated time and expense of protracted litigation, particularly if this case goes to the Eighth Circuit or the United States Supreme Court,[3] the fact that the available funds by the City are very limited, and failure to affirm

[3]If this case went to trial, and if the City of Omaha proved extreme and significant economic concerns, it might be permitted to assert its police powers. *See American Federation v. Benton* v. 513 F.3d 874, 882 (8th Cir. 2008).

this settlement may cause dire consequences for the City.[4] The City argued that it has significant budget issues and is currently facing a $4 million budget deficit for 2010 and a $33.5 million shortfall in 2011, absent any changes.[5] At the hearing on the preliminary injunction, City Finance Director Pam Spaccrotell, C.P.A., testified that the City projects a fiscal deficit in 2010 of $12.3 million and $21 million in 2011. In addition, this settlement will whittle down from 34 health plans to 3 health plans, saving a substantial amount of money.

The City made some major concessions: The retiree premium rate will remain the same[6]; the retirees each get a class representative, so they have a voice that did not exist before[7]; there will be a right for retirees to arbitrate; the arbitration will be less expensive than litigation; pension benefits will remain the same; and there is no risk to the retirees in the event they lost this case and had to pay back their premiums from the date the lawsuit was filed. Further, the highest stop-loss provision is $1,200 and the deductible is $150 to $400 per year. Additionally, under the Patient Protection and Affordable Care Act, the City argues it is permitted to terminate all health coverage if it pays a fine. However, the City states it has no plans to terminate such coverage, but it has agreed that were that to

---

[4]The City of Omaha has serious budget issues, and for example, the City has $1.5 billion dollars in sewer bonds, an unfunded mandate, and unfunded pension liabilities.

[5]See Filing No. 100, Trial Brief, wherein defendants discuss the significant crisis in the budget, particularly as it relates to health care. See also December 6, 2010, Hearing Exhibit 205 (budget crisis).

[6]For example, if a retiree had no premium before, that retiree has no premium under the Settlement Agreement (applies to 84% of retirees in the City of Omaha). The sixteen percent who did have a premium rate that they paid will pay the same rate going forward. The value of this concession by the City is over $3,000,000.

[7]This provision applies to those who retired prior to May 18, 2010. Those who retire after May 18, 2010, will receive the health care plan in effect at the time the medical expense is incurred.

happen, it will continue to cover the retirees until they reach the age of 65 or die, whichever is sooner. The Plan has been changed to permit abolishment of lifetime maximums and to add wellness care. These two changes also constitute increased benefits for the retirees. This is a very rich benefit plan.

The court also finds that the proposed settlement between the plaintiff class and defendants and intervenors to be within the range of reasonableness and, accordingly, the court finds the proposed settlement should be accepted on all issues. Finally, the court finds that although there are some conflicts within the classes, e.g., retired versus current employees, the parties have been well represented during this process. Following service of the court-approved notice on the 10,286 class members, only 17 opted out (5 retirees) and 412 have objected, which represents only 4% of the class. Further, the Settlement Agreement was approved by the executive boards of three labor unions which represent almost all active employees who are class members; the individual retiree class representatives and all of the intervenors who are retired and represented by counsel also approved the Settlement Agreement; and the City approved the Settlement Agreement. There is substantial broad support for the agreement.

Accordingly, for all the reasons stated herein, the court finds that the substance of this agreement is approved. However, the court finds that this agreement lacks certain administrative provisions that are necessary to enable the substance of the agreement. Therefore, the court approves this agreement in conjunction with the findings and order hereinafter provided.

*B. Specific Findings as to the Arbitration Provisions*

The arbitration clauses state:

**10. Right to Participate in Negotiations.** The Fire Union, the Police Union and the Civilian Union, shall agree to allow the applicable Retiree Class Representative of the respective retiree class to participate as a board member in collective bargaining sessions solely dedicated to such changes in Health Care Plan design that affect the applicable Retiree Class. This participation is for the sole and limited purpose of monitoring whether proposed changes in Health Care Plan design agreed to by the Unions, if any, which directly affect the Civilian Retiree Class, the Fire Retiree Class, or the Police Retiree Class, are fair and reasonable considering the economic and financial circumstances then facing the City, the Union. and the respective retiree Class.

**11. Right to Object and Seek Binding Arbitration:** The applicable Retiree Class Representative has the right to object to any proposed change in Health Care Plan design proposed by the Union and the City in the Tentative CBA on the sole and exclusive basis that the proposed change is not fair and reasonable to those members of the Civilian Retiree Class, the Fire Retiree Class, or the Police Retiree Class considering the economic and financial circumstances facing the City, the Union, and the respective retiree class. The applicable Retiree Class Representative's right to object is limited solely to terms of the proposed change in health care plan design which directly affects the retiree class from which he or she is elected. For example, if the Tentative CBA increases premiums for active employees, but none of the retiree class members' premiums would increase due to the terms of this Agreement, the applicable Retiree Class Representative is prohibited from objecting to the Tentative CBA on that basis. No one other than the duly elected applicable Retiree Class Representative shall have the right to object or seek a vote to determine whether the Civilian Retiree Class, the Fire Retiree Class, or the Police Retiree Class should seek binding arbitration.

**12. Procedure for Objecting.** The applicable Retiree Class Representative may only object to the health care plan design in a Tentative CBA under the following conditions:

(A) Within three (3) business days after the City and the Union notify, in writing, the applicable Retiree Class Representative they have agreed upon a Tentative CBA, the Retiree Class Representative must notify the City and the Union, in writing, whether he or she objects to the proposed change in health care plan design in the Tentative CBA.

(B) If the applicable Retiree Class Representative does not provide written objection within three (3) business days after receiving notification, the applicable Retiree Class Representative, and all individuals in the respective retiree class, irrevocably waives all claims and objections on

behalf of anyone in the respective retiree class relating to changes in health care plan design in the Tentative CBA. Upon the expiration of the period in which the applicable Retiree Class Representative may object, the Union and City may ratify the Tentative CBA.

**13. Effect of Objection by the Retiree Class Representative.** If the applicable Retiree Class Representative objects to any proposed change in health care plan design in a Tentative CBA, on the basis that the change will adversely affect, and is not fair and reasonable to, the majority of the Civilian Retiree Class, the Fire Retiree Class, or the Police Retiree Class, as the case may be, considering the economic and financial circumstances facing the City, the Union, and the respective retiree class, the applicable Retiree Class Representative must then, in writing: (A) Inform the Eligible Voters of the affected retiree class of the proposed changes in the health care plan, (B) notify the Eligible Voters of the affected retiree class of the reason the Retiree Class Representative objects to the proposed changes, (C) mail numbered ballots to the Eligible Voters of the affected retiree class, including Spouses and Dependents, at their last known address asking whether they support or oppose the applicable Retiree Class Representative initiating fast track arbitration to determine whether the proposed change in health care plan design is fair and reasonable considering the economic and financial circumstances facing the City, the Union, and the affected retiree class, (D) advise the Eligible Voters of the affected retiree class that each party will bear their own cost of the arbitration, including attorney fees, and (E) notify the Eligible Voters of the affected retiree class that their ballots must be postmarked within fourteen (14) calendar days of the date the applicable Retiree Class Representative notified the City and the Union of his or her objection.

**14. Tallying the Vote.** Only ballots postmarked within fourteen (14) calendar days of the date the applicable Retiree Class Representative notified the City and the Union of his or her objection (the "Postmark Deadline") will be counted. Within five (5) days of the Postmark Deadline, the ballots must be counted and the results of the election announced to the Union and the City. The applicable Retiree Class Representative shall certify that he or she mailed ballots to all Eligible Voters.

The applicable Retiree Class Representative shall preserve the ballots and postmarked envelopes from the vote and allow the Union and/or the City to inspect the ballots to verify the election results.

**15. Effect of the Vote.** (A) If a majority of the Eligible Voters, including Spouses and Dependents, in the affected retiree class, not just those casting ballots, supports the applicable Retiree Class Representative initiating arbitration, the applicable Retiree Class Representative shall

immediately notify the Union and the City of the election result and request the appointment of an arbitrator. An Eligible Voter's failure to cast a ballot shall count as a vote in opposition to arbitration.

(B) If a majority of the Eligible Voters, including Spouses and Dependents, in the affected retiree class, not just those casting ballots, opposes the applicable Retiree Group Representative initiating arbitration, then the Union and the City may ratify the Tentative CBA and the members of the affected retiree class are prohibited from thereafter challenging the enforceability of the CBA.

**16. Fast Track Arbitration.** Upon receiving notice from the applicable Retiree Class Representative that the affected retiree class has voted in support of arbitration, the Union and the applicable Retiree Class Representative shall request an arbitrator through the Federal Mediation Service who has expertise in health care and employee benefits. The City shall have the right, but not the obligation, to participate in the arbitration if in its sole discretion it chooses to do so.

The sole issue to be decided by arbitration is whether the changes in health care plan design in the Tentative CBA are fair and reasonable to the Union and the respective retiree Class as a whole considering the economic and financial circumstances then facing the City, the Union, and the retiree Class as a whole. During the pendency of any objection or arbitration pursuant to this paragraph, health care coverage and costs shall be held at the status quo.

**17. Timing of Arbitration.** The arbitration hearing must be held, and the arbitrator's decision must be issued within, thirty (30) days after the applicable Retiree Class Representative notifies the Union and the City that the Retiree group has voted in support of arbitration.

**18. Effect of Arbitration**

**a. Finding of Not Fair and Reasonable:** If the arbitrator rules in favor of the affected retiree Class by determining that the Health Care Plan design in the Tentative CBA is not fair and reasonable to the affected retiree Class considering the economic and financial circumstances then facing the City, the Union, and the retiree Class as a whole, said finding will prohibit the Union from agreeing to only those proposed health care plan design changes in the Tentative CBA expressly found to be impermissible.

**b. Finding of Fair and Reasonable:** If the arbitrator finds that the health care plan design in the Tentative CBA are fair and reasonable considering the economic and financial circumstances then facing the City, the Union, and the retiree Class as a whole, the Union will have a right to

seek ratification of the Tentative CBA with the City including said changes and the affected class retirees will have no further remedy against the City and/or Union including, but not limited to, claims for failure of adequate representation of their interests.

**19. Cost of Arbitration:** The Union and the members of affected retiree Class who brought the arbitration are to bear their own costs of arbitration including attorney fees, and the non-prevailing party shall assume the cost of the arbitrator, unless it is shown that the arbitration was commenced in bad faith by one of the parties, which finding will allow the prevailing party to recover its costs and attorney fees. The City shall bear no costs, or other liability, with respect to the arbitration.

**20. Termination of Retiree Class Representative Procedures**: When the number of Eligible Voters, including their Spouses and Dependents, who are above the age of eighteen (18), in the Civilian Retiree CIRSs, the Fire Retiree Class, or the Police Retiree Class, is thirty (30) or less, that class's right to elect a Retiree Class Representative and seek fast-track arbitration, and all rights identified in Sections 6 to 19 herein, will terminate.

Filing No. 414, Attach. 1 at 7-10; Ex. 1 to December 6 hearing.

The court finds that these provisions are sufficient to meet the fairness requirement for approval of the Settlement Agreement, provided there are sufficient funds and administrative support for the respective Retiree Class Representatives to accomplish their respective responsibilities. The court is advised, pursuant to a hearing held on December 30, 2010, by the counsel for the City and the Unions that there is an agreement in principal between them that the court may order appropriate support for each Retiree Class Representative. The parties advise the court that the City and each respective union are willing to evenly split and reimburse the Retiree Class Representative for all reasonable and necessary printing and postage costs relating to providing notice, sending ballots and receiving ballots from the applicable retiree class members pursuant to paragraphs 9, 12, and 14 of the Settlement Agreement. Any printing that can be accomplished in-house at one of the Union offices shall be done in-house and any communication with class

members by the class representative that can be effectuated by electronic mail will be done through such medium. It is understood that actual ballots must be mailed in the U.S. Mail, but any incidental communication not specifically required by the agreement will not be subject to reimbursement by the City or the Unions, and the City and the Unions are not hereby agreeing to pay any expert or consultant fees on behalf of the retiree class or its representatives.

The court is further advised that the City and Unions agree that it is reasonable for the court to order the City to reimburse each respective Retiree Class Representative for the reasonable and necessary costs of insurance coverage for an appropriate Errors and Omissions policy, Directors and Officers policy or an appropriate bonding policy, up to a maximum sum for payment of premiums of five thousand dollars ($5,000.00) per collective bargaining cycle, less any amounts paid by City to such Retiree Class Representative for the reasonable and necessary costs set forth in paragraph 1 of the agreement.

In the spirit of the Settlement Agreement entered into between the parties, the court finds that such administrative and financial support for each Retiree Class Representative is generally reasonable. However, the court finds that the proposed cap for premium payment of such insurance policy should not be diminished by the cost of any mailings or expenses. The proposed provision creates a potential conflict of interest between the Retiree Class Representatives' required duties under the agreement and the Retiree Class Representatives' personal protection from suit. The proposed premium cap is not unreasonable because the court is more concerned with affording the Retiree Class Representatives legal representation than it is with the financial limit of liability for such policies. Therefore, the court finds that a maximum cap for the payment of insurance

premiums of $5,000.00 for each Retiree Class Representative per collective bargaining cycle to be paid by the City is reasonable provided it is not diminished by the expenses incurred by the Retiree Class Representatives.

Therefore, the court finds that the Unions and the City should split the costs of mailing and balloting as noted above; that the Unions will provide in-house printing for letters, envelopes, and ballots; and, that the City shall be responsible for insurance premiums of up to $5,000.00 for each Retiree Class Representative as outlined above and such sum shall not be diminished by any other administrative expenses. Accordingly,

IT IS ORDERED:

1. The plaintiffs' motion for approval of proposed Settlement Agreement (Filing No. 410 and Filing No. 414, Attach. 1) is granted with respect to all provisions, subject to the financial and administrative contributions of the City and respective Unions as outlined herein.

2. The bond previously posted by the Unions is hereby exonerated and the requirement for the bond is hereby vacated.

DATED this 3rd day of January, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.